NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIOT S. SASH, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 09-2074 (DMC) |
| THE UNITED STATES OF AMERICA, *et al.* | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions to dismiss by The United States of America ("United States") and nine employees of the Federal Bureau of Prisons: Kendahl Gainer, Edward Netzband, Daniel Thomas, Jr., Jeffrey Solomon, Christopher Smith, Jonathan Miner, D. Scott Dodrill, Harrell Watts, Karen Hogsten ("BOP Defendants") (collectively, "Defendants"). Defendants move to dismiss the Complaint of Plaintiff Eliot S. Sash ("Plaintiff"), who asserts a variety of constitutional and tort law claims. The BOP Defendants move to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), and for failure to state a claim upon which relief may be granted under FED. R. CIV. P. 12(b)(6). The United States moves to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

No oral argument was heard pursuant to FED. R. CIV. P. 78. Upon consideration of the parties' submissions, and for the reasons stated below, Defendants' motions to dismiss are hereby **granted in part** and **denied in part**.

## I. BACKGROUND[1]

On January 23, 2004, Plaintiff was convicted of violating 18 U.S.C. § 1028, Fraud in Connection with Identification, and 18 U.S.C. § 1029, Access Device Fraud, in the United States District Court for the Southern District of New York. See Compl. ¶ 18. He was sentenced to a twenty-seven month term of incarceration.

In September 2006, a term of supervised release was revoked and Plaintiff was returned to custody. During December 2006, Plaintiff was incarcerated at the Federal Correctional Complex at Allenwood, Pennsylvania, in the Low Security Correctional Institution ("LSCI Allenwood"). Compl., ¶¶ 25, 38. While he was at LSCI Allenwood, Plaintiff was notified that a Sex Offender classification was on his Bureau of Prisons ("BOP") inmate file. Id. ¶ 24. Plaintiff disputed this classification through the BOP's inmate grievance procedures. Id. ¶ 24-26. In January 2007, Plaintiff requested review of a decision denying him placement in a camp facility because of the Sex Offender Public Safety Factor on his file. Id. ¶ 28. Plaintiff alleges that on February 23, 2007, Defendant Dodrill granted him "paper" relief on his grievance of the Sex Offender classification. Id. ¶¶ 26-27.

In August 2007, the New York State Department of Criminal Justice Services responded to Plaintiff's request for an official record. Id. ¶ 34. The response showed that there was no conviction for an alleged sex offense. Id. Plaintiff requested that his inmate classification, accordingly, be changed. Id. Defendant Gainer allegedly told Plaintiff that notwithstanding the lack of conviction, she would continue to follow the information in the PSR. Id. She further told Plaintiff that if he was unsatisfied, he could file a new request for an administrative remedy. Id. ¶ 35.

---

[1] The facts in the Background section have been taken from the parties' moving papers.

After Plaintiff arrived at Toler House on October 2, 2007, he was informed that he was not eligible for home confinement because of the Sex Offender Public Safety Factor. Id. ¶ 36. On October 24, 2007, for the same reason, Plaintiff was notified that he would not be allowed to leave the halfway house until further notice. Id. ¶ 37. Plaintiff alleges that on October 25, 2007 he was informed at Toler House that the BOP was requiring everyone in the halfway house who had been given a sex offender designation to register with their local police department. Compl. ¶ 38. Plaintiff alleges that he attempted to register as a sex offender at the Closter Police Department, but was informed by Detective Sgt. Dennis Kaine that he was not required to do so because he was not a resident of Bergen County. Id. ¶ 40; *see also* Compl., Ex. A. Plaintiff advised the Police Department that he was residing in another state, but would seek to resolve this matter when he returned to New Jersey. Id. ¶ 43.

In August 2008, Plaintiff made an appointment with the Closter Police Department. Compl. ¶ 44. He was interviewed and had his fingerprints and photos taken. Id. The information was submitted to the Bergen County Prosecutor's Office. Id. On November 17, 2008, Plaintiff was informed that the Bergen County Prosecutor's Office had completed its investigation. Compl. ¶ 45. Attached to Plaintiff's Complaint is an undated letter from June M. Chesney, MA, addressed to Sgt. Dennis Kaine stating that the Bergen County Prosecutor's Office had "placed repeated inquiries with the New York State Police," and that their was a "lack of evidence of a conviction on the Sodomy charge in question." Id. Ex. B. As a consequence, the Assistant Prosecutor determined that "as of this writing [Plaintiff] would not fit the requirements for Megan's Law registration in the State of New Jersey." Id. Ms. Chesney requested that Sgt. Kaine remove Plaintiff's file from his records and to shred or destroy any paperwork with Plaintiff's identifying information.

On June 9, 2009, the Court granted Plaintiff's motion to proceed with this case *informa pauperis*. In a supplemental order dated June 18, 2009, the Court directed the U.S. Marshals Service to perfect service upon all defendants.

## II. DISCUSSION

Plaintiff brings constitutional and tort law claims against the BOP Defendants and the United States. The BOP Defendants move to dismiss **(A)** for lack of personal jurisdiction, and **(B)** for failure to state a claim upon which relief may be granted; the United States moves to dismiss **(C)** for lack of subject matter jurisdiction. The Court will consider each basis for dismissal in turn.

A.     MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

    1. Applicable Law

Plaintiff must establish that personal jurisdiction is proper over the Defendants. Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992) ("[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."). In this instance, the New Jersey long-arm statute applies, which specifically extends New Jersey's jurisdiction to the fullest limits permitted by the U.S. Constitution, subject to due process of law. Osteotech, Inc. v. Gensci Regeneration SCI, Inc., 6 F.Supp. 2d 349, 352 (D.N.J. 1998). To determine whether personal jurisdiction exists under the due process clause, the appropriate inquiry is whether defendants have sufficient minimum contact with New Jersey such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contact requires "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."

Hanson v. Denckla, 357 U.S. 235 (1958).

A court may exercise either "general" or "specific" personal jurisdiction over a defendant. A defendant may be subjected to general jurisdiction when he or she has maintained "continuous and systematic" contacts with the forum state—even if the conduct from which the claims arises occurs outside of the jurisdiciton. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products, 75 F.3d 147, 151 (3d Cir. 1996) (citation omitted); Burger King, 471 U.S. at 473 n. 15.

A defendant may be subjected to specific jurisdiction "when the cause of action arises from the defendant's forum related activities, such that the defendant should reasonably anticipate being haled into court there." Vetrotex, 75 F.3d at 151. Accordingly, "[s]pecific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King, 471 U.S. at 472). Conduct giving rise to specific jurisdiction, then, must be tied to the particular claim asserted.

Moreover, in a torts case, such as here, courts may also apply the "effects test" articulated by the Supreme Court in Calder v. Jones to establish jurisdiction. 465 U.S. 783 (1984); see IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265 (3d Cir. 1998) (adopting Calder "effects" test in a tortious interference case). "Under the effects test, a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 148 (3d Cir. 1992). The Third Circuit has developed three prongs for the Calder "effects test": (1) the defendant must have committed an intentional tort; (2) the plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the

plaintiff as a result of the tort; (3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of tortious activity. See IMO Industries, 155 F.3d at 265.

    2. Analysis

Plaintiff has not established personal jurisdiction over a number of the BOP Defendants, and the Complaint must be dismissed as to these individuals.

Plaintiff has not established that personal jurisdiction may be asserted over Edward Netzband, Daniel Thomas, Jr., Jeffrey Solomon, Christopher Smith, Jonathan Miner, Harrell Watts, Karen Hogsten. See Compl. ¶¶ 3-10. None of these individuals work, reside or own real property in New Jersey. See BOP Br. at 9. As they do not have systematic contacts with New Jersey, there does not appear to be general personal jurisdiction. Further, there are no allegations suggesting that these individuals could potentially be subjected to specific personal jurisdiction (such as through conduct directed towards the forum state). See, e.g., General Elec., 270 F.3d at 150 (noting a party's purposeful direction of business activity toward the forum state); IMO Industries, 155 F.3d at 265 (applying the Calder test and finding no specific jurisdiction). Accordingly, Plaintiff's complaint against these Defendants must be dismissed.

The only BOP Defendants who arguably appear to be subject to personal jurisdiction in this Court, then, are D. Scott Dodrill and Kendahl Gainer.[2] The Court, however, need not pass upon this

---

[2] There is no dispute that this Court may exercise general personal jurisdiction over BOP Defendant Dodrill based upon his New Jersey residence. As to Ms. Gainer, Plaintiff's only contention that she had contact with New Jersey was that "Defendant Rene said that a call was received [in New Jersey] from Defendant Gainer regarding the sex offender designation and that Defendant Bourke would speak to me the next morning regarding it." Compl., ¶ 37. That is, Plaintiff asserts that Defendant Gainer made a single called to a halfway house in New Jersey.
    As a Case Manager, Ms. Gainer normally only corresponds with BOP's Community

question, as it finds that Plaintiff has not stated a claim against the nine BOP Defendants. See Section II.B, infra.

**B.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

The BOP Defendants move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

1. Applicable Law

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 ( 1984). In Bell Atlantic Corp. v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard. 550 U.S. 544 (2007).

---

Corrections staff in Philadelphia, Pennsylvania, regarding inmates and their halfway house placement. Accordingly, any contact that Toler House would have had with the BOP would normally not have occurred with Ms. Gainer. See United States Brief in Support of its Motion to Dismiss ("U.S. Br.") ¶ 29. It is not entirely clear whether such limited contact is sufficient to establish personal jurisdiction. Compare Walburn v. Rovema Packaging Machs., L.P., 2008 U.S. Dist. LEXIS 25369, at *16 (D.N.J. Mar. 28, 2008) (finding a limited number of phone/mail communications were insufficient to establish specific jurisdiction); Chicosky v. Presbyterian Medical Ctr., 979 F. Supp. 316, (D.N.J. 1997) ("Indeed, the notion that, in this day and age, a single telephone call from Pennsylvania to New Jersey could be considered a purposeful availment of the privilege of conducting activities within New Jersey, rather than an attenuated, random, and fortuitous contact, is, under these facts, without support."); with Lawn Doctor, Inc. v. Branon, 2008 U.S. Dist. LEXIS 39095 (D.N.J. May 14, 2008) (noting that in certain instances a single communication—from which **the allegedly tortious conduct arises** can establish specific personal jurisdiction) (emphasis added).

Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

2. Analysis

Plaintiff brings a number constitutional and tort law claims against the BOP Defendants for allegedly mislabeling him as a sex offender in his BOP inmate file.

Plaintiff's Complaint includes constitutional claims premised upon violations of his rights under the Due Process and Equal Protection clause and the Eighth Amendment. These claims are asserted against the BOP Defendants in their individual capacities. Accordingly, the Court will construe the claims as arising under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

To prevail on a Bivens claim, a plaintiff must show that he has been deprived of a right secured by the Constitution and that a defendant deprived him of that right under color of federal law. See Mahoney v. Nat'l Org. for Women, 681 F. Supp. 129, 132 (D. Conn. 1987) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)). Plaintiff's constitutional claims are without merit, however, as "claims based on prison classification procedures do not state a constitutional

-8-

violation." See Moody v. Daggett, 429 U.S. 78 n.9 (1976) (determining there is no legitimate statutory or constitutional entitlement sufficient to invoke due process with respect to prisoner classification and eligibility for rehabilitative programs in the federal system); Day v. Nash, 191 Fed. Appx. 137, 139-40 (3d Cir. July 24, 2006) (finding no due process violation in assigning a prisoner a Sex Offender Public Safety Factor); see also Wilkinson v. Austin, 545 U.S. 209 (2005) (noting that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Montanye v. Haymes, 427 U.S. 236, 242 (1976) (determining that there is no inherent constitutional right to placement in a particular security classification). Plaintiff has failed to state a constitutional claim against Defendants, and such claims must be dismissed.

Plaintiff's remaining claims against the BOP Defendants are based on a variety of torts, and are brought pursuant to the The Federal Tort Claims Act ("FTCA").[3] The Federal Employees Liability Reform and Tort Compensation Act ("the Westfall Act"), however, "confers absolute immunity on federal employees for torts committed within the scope of their employment by making an FTCA action against the United States the exclusive remedy for such torts." Kielty v. Ali, 2008 U.S. Dist. LEXIS 54052, at *2 (D.N.J. July 16, 2008) (citing 28 U.S.C. § 2679(b)(1) and United States v. Smith, 499 U.S. 160, 163-64)). Here, the United States filed a notice of substitution in this case on September 19, 2009. The United States, then, has now assumed the BOP Defendants' role as Defendant to the state law-based (FTCA) tort claims. See, e.g., Kielty v. Cady, 2008 U.S. Dist. LEXIS 62455, at *3 (D.N.J. July 30, 2008); see also BOP Br. at 22-23 (noting that the United States

---

[3] The applicable substantive law is Pennsylvania tort law. See, e.g., Molzof v. United States, 502 U.S. 301, 305 (1992) (stating that the "extent of the United States' liability under the FTCA is generally determined by reference to state law"); Horne v. United States, 2007 U.S. App. LEXIS 5482, at *1 (3d Cir. 2007) (affirming a district court's decision to apply state law to a prison inmate's claim of medical malpractice, brought under the FTCA).

submitted a "Certification of Scope of Employment, which confirms that the Defendants were acting within the scope of their employment as employees of the United States at the time of the conduct alleged in the Complaint).[4] Accordingly, Plaintiff's claims against the individual BOP Defendants are dismissed, and the tort claims are asserted against the United States.[5]

The Court will consider the remaining tort law claims against the United States below, in Section II.C. The United States has filed a motion to dismiss these claims for lack of subject matter jurisdiction.

C.  **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff asserts a variety of state tort law claims against Defendant United States pursuant to the FTCA. The claims are for

> the deliberate, willful and malicious failures the [sic] Defendant's employees of the Federal Bureau of Priosons (FBOP) to properly record and maintain the records pertaining to me by deliberately, willfully and maliciously allowing an erroneous "Public Service Factor" (PSF) of "Sex offender" to remain on me in violation of FBOP Rules, Program Statements, Policy Statement and Operation Memoranda . . . when the correct information was easily verifiable from the New York State Department of Criminal Justice Services. . . . The Defendant's employees then deliberately, willfully and maliciously disseminated this knowingly erroneous information to third parties [including a] BOP Contract Halfway House (Toler House

---

[4] The Court also notes that in addition to Defendant United States' certification, Plaintiff's allegations clearly indicate that the allegedly unlawful conduct of Defendants occurred within the scope of their employment.

[5] The claims against Edward Netzband, Daniel Thomas, Jr., Jeffrey Solomon, Christopher Smith, Jonathan Miner, Harrell Watts, and Karen Hogsten were already dismissed for lack of personal jurisdiction. See Section II.A, supra. The Court finds that such claims may alternatively be dismissed for failure to state a claim in accordance with Section II.B, supra. This second ground for dismissal applies to all BOP Defendants (i.e., including the two remaining individual BOP employees, Kendahl Gainer and D. Scott Dodrill). Accordingly, Plaintiff's claims against the BOP Defendants individually, must be dismissed. The tort claims that remain, then, are asserted against the United States, despite the fact that such claims are based upon the conduct of the individual BOP Defendants.

>       in Newark, New Jersey) . . . [and] though ordering the Staff at Toler House later
>       directly notified the local police department (Closter, New Jersey where I reside).

Comp. ¶ 2.

Although Plaintiff has not explicitly stated the causes of action forming the basis for his claims, the Court reads them to be intentional infliction of emotional distress, negligent infliction of emotional distress, defamation/libel/slander and negligence.

The United States responds that sovereign immunity bars Plaintiff's tort claims, and it has moved for dismissal pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.[6]

    1. Applicable Law

        (a)  *FED. R. CIV. P. 12(b)(1)*

The burden is on the plaintiff to prove that subject matter jurisdiction exists. Wyeth and Cordis Corporation v. Abbott Laboratories, 2008 U.S. Dist. LEXIS 38313, * 2 (D.N.J. May 8, 2008). In Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977), the Third Circuit explained that RULE 12(b)(1) motions fall into two categories: facial and factual. International

---

[6] The United States also asserts that Plaintiff failed to exhaust his administrative remedies because "before bringing an action in federal court against the United States, a plaintiff must file a claim with the appropriate federal agency, and the agency must issue a final denial of the claim." U.S. Br., at 15 (citing 28 U.S.C. § 2675(a) and McNeil v. United States, 508 U.S. 106, 110-11 (1993)). The United States asserts that Plaintiff did not receive a "final rejection" of his claim, and thus his administrative remedies were not fully exhausted. It is true that a deficient administrative claim does not suffice to permit a Plaintiff to file suit in federal court, see e.g., In re Ingram Barge Co., 435 F. Supp. 2d 524, 527 n. 3 (E.D. La. 2006); Thomas v. Ashcroft, 2006 U.S. Dist. LEXIS 20338, at *11-12 (M.D. Pa. Mar. 30, 2006. This, however, was not the case with Plaintiff's administrative claim. Plaintiff, here, had his claim denied—it was not dismissed with instructions to refile (or denied with an explanation that Plaintiff had the right to appeal). Further, Plaintiff's BOP Case Manager informed him that she would continue to follow her interpretation of the PSF regardless of the underlying basis for his Sex Offender classification. See Comp. ¶ 34. Accordingly, the Court finds that Plaintiff exhausted his administrative remedies prior to filing this claim in federal court.

Development Corporation v. Richmond, 2009 U.S. Dist. LEXIS 106326, at * 2 (D.N.J. Nov. 13, 2009). "A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction." Id. Accordingly, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

In contrast, when the court considers a factual attack on jurisdiction under 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Id. Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. Gould Electronics, 220 F.3d at 178. "In general, when a Rule 12(b)(1) motion is supported by a sworn statement of facts, the court should treat the Defendant's challenge as a factual attack on jurisdiction." International Development Corporation v. Richmond, 2009 U.S. Dist. LEXIS 106326, at * 2 (quoting Med. Soc'y of N.J. v. Herr, 191 F.Supp.2d 574, 578 (D.N.J. 2002)).

(b)  *Sovereign Immunity & The Federal Tort Claims Act*

The United States has sovereign immunity from suit, except to the extent that it consents to being sued. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act provides a limited waiver of the United States' immunity from tort claims. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 808 (1984); see also 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674. However, if the United States has not waived sovereign immunity as to a certain claim under the FTCA, the claim must be dismissed for lack of subject matter jurisdiction. See Bernitsky v. United States, 620 F.2d 948, 950

(3d Cir. 1980).

   2. Analysis

Plaintiff's tort claims are cognizable only insofar as the United States has waived its sovereign immunity. See Bernitsky, 620 F.2d at 950. To the extent Plaintiff's claims are barred by immunity, they must be dismissed. The Court will consider whether Plaintiff may proceed on his claims, which appear to be claims for (a) defamation/libel/slander, (b) intentional/negligent infliction of emotional distress, and (c) negligence.

    (a) *defamation/libel/slander*

The FTCA does not waive sovereign immunity with respect to claims arising out of libel, slander or defamation. See 28 U.S.C. § 2680(h); Brumfield v. Sanders, 232 F.3d 376, 382 (3d Cir. 2000) (citing 28 U.S.C. § 2680(h) and cases from other circuits). Accordingly, because the FTCA does not waive sovereign immunity with respect to Plaintiff's defamation/libel/slander claims, and "[s]overeign immunity . . . deprives a court of subject matter jurisdiction over a claim against the United States," the Court lacks subject matter jurisdiction over these claims. See Kielty, 2008 U.S. Dist. LEXIS 54052, at *4 (citations omitted).

Defendants' motion to dismiss is granted as to these claims.

    (b) *intentional/negligent infliction of emotional distress*

The Court must similarly dismiss Plaintiff's infliction of emotional distress claims **to the extent that arise out of the defamation/libel/slander claims**. See Borawski v. Henderson, 265 F. Supp. 2d 475, 484 (D.N.J. 2003) ("Because the FTCA precludes claims arising out of defamation and slander, the invasion-of-privacy and intentional-infliction-of-emotional-distress claims also must fail.") (internal quotations omitted); see also Quinones v. United States, 492 F.2d 1269 (3d Cir.

1974) (finding that the libel and slander exception to the FTCA bars a claim based on the alleged dissemination of inaccurate information); Baker v. United States, 943 F. Supp. 270 (W.D.N.Y. 1996) (determining that a claim by a counselor at a veterans hospital that other employees changed and falsified records was essentially a defamation claim, and thus, was barred under the libel and slander exception to the FTCA).

Accordingly, Defendant's motion to dismiss Plaintiff's emotional distress claims that directly arise out of the defamation-related claims must be dismissed. The Court, however, will reserve judgment on any emotional distress claims that do not arise out of defamation, libel or slander.

(c) *negligence*

The remaining claim that this Court can discern from Plaintiff's Complaint is one for negligence. Plaintiff asserts that the United States was negligent in failing "to properly record and maintain records pertaining to Plaintiff allowing an erroneous Sex Offender Public Safety Factor to remain in his BOP records," even after he filed an internal grievance. Compl. ¶ 1. Plaintiff asserts that this omission caused him significant harm such as (1) the inability to be classified as a "minimum security" inmate, (2) being denied placement in a "camp" facility, (3) rendering him ineligible for "home-confinement," and (4) emotional distress arising from the aforementioned limitations on his placement. See Compl., ¶ 1.

Defendant responds that Plaintiff's negligence claim is barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. See U.S. Br., at 19. This Court does not agree with Defendant.

Program Statement 5100.08 explains that BOP inmates are classified into one of five security levels, namely minimum, low, medium, high and administrative, based on the level of security and

staff supervision the institution is able to provide.  See Program Statement 5100.08, Chapter 1, Page 1.  BOP inmates are classified based on factors such as the level of security and supervision the inmate requires and the inmate's program needs.  Id.  The initial classification is done in accordance with "information from the sentencing court, U.S. Marshals Service, U.S. Attorneys Office or other prosecuting authority and the U.S. Probation Office about the inmate into a computer database (Sentry)."  Id. at Chapter 1, Page 2.

"There are nine Public Safety Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security)."  Id.  "The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior."  Id.  One such PSF applied by the BOP is a Sex Offender PSF.  This type of PSF is applied to the following types of inmates:

> A male or female inmate whose behavior in the current term of confinement or prior history includes one or more of the following elements will be housed in at least a Low security level institution, unless the PSF has been waived.  **A conviction is not required for application of this PSF if the Presentence Investigation (PSR), or other official documentation, clearly indicates the following behaviors occurred in the current term of confinement or prior criminal history.  If the case was dismissed or nolle prosequi, the application of this PSF cannot be entered.  However, in the case where an inmate was charged with an offense that included one of the following elements, but as a result of a plea bargain was not convicted, application of this PSF should be entered**.
> [ . . . ]
> (1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or sexual battery);
>
> (2) Possession, distribution or mailing of child pornography or related paraphernalia;
>
> (3) Any sexual contact with a minor or other person physically or mentally incapable of granting consent (indecent liberties with a minor, statutory rape, sexual abuse of the mentally ill, rape by administering a drug or substance);
>
> (4) Any sexual act or contact not identified above that is aggressive or abusive in

>nature (e.g., rape by instrument, encouraging use of a minor for prostitution purposes, incest, etc.). Examples may be documented by state or Bureau of Prisons' incident reports, clear NCIC entries, or other official documentation;
>
>(5) Attempts are to be treated as if the sexual act or contact was completed; and/or,
>
>(6) Any offense referenced in the Sex Offender Notification and Registration Program Statement.

Program Statement 5100.08, Chapter 5, Page 8.

Here, Plaintiff was assigned a Sex Offender PSF. This assignment was based upon Plaintiff's pretrial sentencing report ("PSR") which indicated that he was arrested and charged with kidnapping, sodomy and resisting arrest on June 28, 1977. See BOP Br. at 7. The PSR indicated that Plaintiff was found guilty on the kidnapping charge and sentenced to 75 days in jail. Id. Since all records of this case were purged, there was no way to determine how the sodomy or resisting arrest charges were resolved. Id.

Defendant Gainer determined that the kidnapping conviction in connection with the sodomy charge indicated possible sexual contact with a minor. Id. at 8. Although there was no record of how the sodomy charge was handled, Ms. Gainer determined that the application for the Sex Offender PSF was appropriate to prevent Plaintiff from being incarcerated at a facility where there was no secure perimeter to control Plaintiff's contact with the public. Id. Defendant asserts that Defendant Gainer was not negligent in making this determination.

This Court cannot agree with Defendant. As the BOP's Program Statement indicates, a PSF may be applied to an inmate "if the Presentence Investigation (PSR), or other official documentation, **clearly indicates** [certain] behaviors occurred in the current term of confinement or prior criminal history." See Program Statement 5100.08, Chapter 5, Page 8 (emphasis added). Plaintiff's prior criminal history indicates a kidnapping and sodomy charge. A conviction was obtained on the

kidnapping charge alone. It is undisputed that there was no sodomy conviction. In August 2007, the New York State Department of Criminal Justice Services confirmed that there was no conviction for any sex offense. Id. This was also confirmed through an investigation by the Bergen County Prosecutor's Office. Id. ¶ 45.

It is true, as Defendant notes, that a Sex Offender PSF may be assigned absent a conviction, for example, where a criminal defendant's plea deal caused an alleged sex offense to be dropped. Here, however, there is no documentation indicating that the sodomy charge was dropped as a result of a plea. The charge may well have been dropped as unsubstantiated. As Defendant admits, the PSR was unclear how the sodomy charge was handled. See BOP Br. at 8.[7] As such, the assignment of a Sex Offender PSF to Plaintiff appears to contradict the above-cited BOP regulations.

Defendant next argues that even if a BOP employee(s) was negligent in failing to modify Plaintiff's PSF (i.e., misclassified Plaintiff or permitted him to remain misclassified), his or her actions fell within the discretionary function exception to liability under the FTCA. See 28 U.S.C. § 2680(a) (prohibiting "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."). Although the Court recognizes that the discretionary function exception frequently applies to BOP inmate classification procedures,[8] it cannot agree with Defendant that the exception applies under these circumstances.

---

[7] If Defendant had presented evidence to the contrary—for example, indicating that the sodomy charge was dropped as a result of a plea—there would be no question that the PSF was properly entered under the BOP regulations.

[8] See, e.g., Harper v. United States, 2009 U.S. Dist. LEXIS 90531, at *11 (September 30, 2009, E.D. Ky.) (collecting cases). Inmate classification claims are routinely denied when an inmate asserts that an improper classification of **another** inmate resulted in injury to the inmate

The above-excerpted BOP Program Statement sets forth the criteria upon which the BOP may assign a PSF. It does not appear that such criteria was met here, and Plaintiff was nonetheless designated as having a Sex Offender PSF. See Program Statement 5100.08, Chapter 5, Page 8. Accordingly, Defendant's decision to assign the Sex Offender PSF was not discretionary because "the government actor [BOP personnel] failed to follow an established classification policy, [and therefore] that governmental actor has performed an operational [i.e., non-discretionary] function." See, e.g., Britt v. Prison Health Servs., 2007 U.S. Dist. LEXIS 52908 (M.D. Fla. July 22, 2007) ("Plaintiff's negligence claim is not barred, however, to the extent she is alleging that Sheriff Parker improperly classified Mr. Britt under the existing [classification] policies."); Watson v. United States, 2005 U.S. Dist. LEXIS 17394, at *2-3 (N.D. Tex. Aug. 17, 2005) (recognizing a cognizable tort claim pursuant to the FTCA based upon assertions that "prison officials were negligent in their supervision **and classification** of inmates.") (emphasis added). As the Supreme Court explained in United States v. Gaubert,

> if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.

499 U.S. 315, 347 (1991); see Cohen v. United States, 151 F.3d 1338, 1344-45 (11th Cir. Ga. 1998) (applying Gaubert to a BOP Program Statement covering prisoner classification); see also Lambert

---

bring suit (e.g., where an inmate asserts he or she was impermissibly placed with a more violent inmate). See, e.g., Ballester v. United States, 2006 U.S. Dist. LEXIS 89522, at *7-8 (N.D.Ga. 2006) (finding that the BOP's decision to place plaintiff in cell with another inmate who subsequently assaulted him fell within discretionary function exception to FTCA). Here, in contrast, Plaintiff asserts that **he** was erroneously classified. If Plaintiff's allegations regarding his misclassification are accurate, the Court cannot find that the discretionary exception applies to the conduct of the BOP personnel, for the reasons stated.

v. United States, 198 Fed. Appx. 835, 839 (11th Cir. Fla. 2006) ("[T]he BOP's failure to follow its own procedures renders the discretionary function exception inapplicable").  Accordingly, having failed to comply with the BOP's own regulations, the discretionary function exception cannot apply to the allegedly negligent conduct of Defendant here.

For the reasons stated, Defendant United States' motion to dismiss Plaintiff's negligence claim is denied.

### III. CONCLUSION

The BOP Defendants' motion to dismiss Plaintiff's claims against the individual BOP Defendants is hereby **granted**, and Defendant United States' motion to dismiss Plaintiff's claims is hereby **granted in part** and **denied in part**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:      April   14  , 2010
Original:  Clerk's Office
cc:        All Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File